**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ROBERT A. MARIOTTI, SR.,

Plaintiff,

MARIOTTI BUILDING PRODUCTS, INC.,

Defendant.

CIVIL ACTION NO. 3:11-CV-737

(JUDGE CAPUTO)

**MEMORANDUM**

Presently before the Court is defendant Mariotti Building Products, Inc.'s ("MBP") motion to dismiss plaintiff Robert Mariotti's amended complaint. (Doc. 22.) Mr. Mariotti essentially claims that MBP officers and directors harassed and ultimately fired him because of his religious affiliation in violation of federal and state antidiscrimination laws. MBP contends that this a family dispute, not a legal one. Specifically, it argues that the complaint should be dismissed for three reasons. First, Mr. Mariotti was not an employee under Title VII. Second, he has failed to adequately allege a "hostile work environment." Third, the Court should not exercise supplemental jurisdiction over the remaining state law claims. The Court agrees and will grant MBP's motion to dismiss.

**BACKGROUND**

Mr. Mariotti's amended complaint alleges the following.

Mr. Mariotti's father, Louis S. Mariotti, founded MBP under the name Locket Lumber in August 29, 1947. Mr. Mariotti and his two brothers joined the business in the 1960s. Over the subsequent forty years, MBP's annual sales grew from less than two-hundred and fifty-thousand dollars ($250,000.00) to over sixty-million ($60,000,000.00). In his over forty-five years with the MBP, Mr. Mariotti developed a number of MBP's business areas. He

trained staff in the day to day management of several product lines. He also principally managed the manufactured housing sales division, as well as customer credit, bill paying, purchasing, and the inbound transportation of product lines. As one of MBP's "founders" who "built the business," Mr. Mariotti served on the Board of Directors until August 6, 2009, and held the positions of Vice President and Secretary.

In 1995, after experiencing a "spiritual awakening," Mr. Mariotti began participating in the religious activities "Our Father's Divine Work" – a Roman Catholic lay ministry founded by Mary Ellen Lukas. Shortly thereafter, Mr. Mariotti switched Church affiliations. He began attending mass at St. Nicholas Byzantine Catholic Church and stopped going to St. Mary's, the Mariotti family church. Subsequently, MBP officers and directors continually teased and taunted Plaintiff about his new spiritual orientation. They frequently referred to Mr. Mariotti as "Reverend Bob," and often insinuated that Ms. Lukas' lay ministry was a cult controlling Mr. Mariotti. MBP also stopped providing "Our Father's Divine Work" with special pricing, a favor routinely granted to charities and non-profit organizations. MBP officers were also openly hostile to Ms. Lukas. After Mr. Mariotti's wife passed away, Mr. Mariotti's sister-in-law told Ms. Lukas she was not welcome at the funeral despite Mr. Mariotti's wishes.

The tension over Mr. Mariotti's involvement with "Our Father's Divine Work" erupted in January 2009 at the funeral of Mr. Mariotti's father. Plaintiff's brother Eugene Mariotti Sr. made derogatory comments about Catholicism and also yelled at Mr. Mariotti for traveling separately to the service. Mr. Mariotti's heavily religious eulogy angered his family members. Shortly after the service, Mr. Mariotti received text messages from upset family members deriding his remarks. A few days later, a fax informed Mr. Mariotti that the

shareholders had called an emergency meeting and unanimously voted to terminate him.

Mr. Mariotti then brought this suit after filing complaints with the Equal Employment Opportunity Commission and the Pennsylvania Human Rights Commission. In his amended complaint, Mr. Mariotti brings the following claims: religious discrimination and hostile work environment under Title VII (counts I and II); religious discrimination under the Pennsylvania Human Rights Act ("PHRA") (count III); breach of employment agreement (count IV); unlawful termination (count V); and *ultra vires* action without proper notice (count VI). MBP then filed its motion to dismiss. The motion has been fully briefed and is ripe for review.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (requiring a complaint to set forth information from which each element of a claim may be inferred). In light of Federal Rule of Civil Procedure 8(a)(2), the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555). "[T]he factual

detail in a complaint [must not be] so undeveloped that it does not provide a defendant [with] the type of notice of claim which is contemplated by Rule 8." *Phillips*, 515 F.3d at 232; *see also Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of her claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The Court does not consider whether a plaintiff will ultimately prevail. *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

## DISCUSSION

### I. Mr. Mariotti's Title VII Religious Discrimination Claim

The Court will dismiss Mr. Mariotti's Title VII religious discrimination claim because he was not an "employee" at the time of the alleged incidents.

Title VII defines "employee," rather unhelpfully, as "an individual employed by an employer." 42 U.S.C. § 2000e(f). To supplement this circuitous definition, the courts look at six factors in determining whether an individual is an employer or an employee entitled to invoke Title VII's anti-discrimination laws:

> (1) whether the organization can hire or fire the individual or set the rules and regulations of the individual's work;
>
> (2) whether and, if so, to what extent the organization supervises the individual's work;
>
> (3) whether the individual reports to someone higher in the organization;
>
> (4) whether and, if so, to what extent the individual is able to influence the organization;

(5) whether the parties intended that the individual be an employee, as expressed in written agreements or contracts;

(6) whether the individual shares in the profits, losses, and liabilities of the organization.

*Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 449-50 (2003). In this inquiry, "[t]he touchstone . . . is control . . . with no one factor being decisive." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 09-4498, 2010 WL 2780927, *1 (3d Cir. July 15, 2010) (quoting *Clackamas*, 538 U.S. at 449, 451).

In *Kirleis*, plaintiff, a Class A shareholder-director, sued defendant law firm for employment discrimination. Defendant successfully argued that plaintiff was not an "employee" under Title VII and was granted summary judgment. On appeal, plaintiff argued that her position on the board of directors was a mere "rubber stamp," and that the Executive Committee – rather than the board – set the firm's hourly rates, made compensation decisions, and had the power to fire shareholders. She also argued that her decision-making was limited and that the firm closely supervised her work. *Kirleis*, 2010 WL 2780927 at *1. Upholding the trial court, the Third Circuit pointed to several pertinent facts about plaintiff's position with the firm. As a Class A shareholder-director, plaintiff had the ability to participate in the firm's governance, as well as the right not to be terminated without a 3/4 vote of the board of directors for cause. Furthermore, she was entitled to a percentage of the firm's profits, losses, and liabilities. *Id.* at *2.

Here, MBP argues that Mr. Mariotti had even *more* control over the business than the plaintiff in *Kirleis*. Mr. Mariotti, however, contends that while *Kirleis* involved a professional corporation, MBP is a general, S-corporation. Additionally, Mr. Mariotti argues

that unlike a shareholder in a professional corporation or a general partner: he did not share in MBP's profits or losses beyond the occasional dividend; he drew a fixed salary; he did not set company policy; and he had to report to the board of directors.

Eschewing formal titles and focusing on "control," the Court finds that Mr. Mariotti was an employer under Title VII. Specifically, Mr. Mariotti: was a founding member of MBP; ran several major divisions; trained employees in these divisions' day-to-day management; held board positions, including Secretary and Vice President; and was only terminated after a shareholder vote. Although the amended complaint does not state Mr. Mariotti's ownership stake in MBP, he was, and continues to be, a shareholder in the company. While he did have to report to the Board, in a corporation, everyone does, including the CEO. Further, Mr. Mariotti claims he was fired only after a shareholder vote, a procedure not afforded the average employee but required to remove board members.

Therefore, the Court will dismiss Mr. Mariotti's federal religious discrimination claim because he was not an "employee" under Title VII.

**II. Mr. Mariotti's Hostile Work Environment Claim**

Even if Mr. Mariotti was an employee under Title VII, he has failed to state a hostile work environment claim.

To make out a religiously hostile work environment claim under Title VII, a plaintiff must demonstrate five elements:

(1) the employee suffered intentional discrimination because of [religion];

(2) the discrimination was pervasive and regular;

(3) the discrimination detrimentally affected the plaintiff;

(4) the discrimination would detrimentally affect a reasonable person of the same

[religion] in that position; and

(5) the existence of respondeat superior liability.

*Abramson v. William Paterson College of NJ*, 260 F.3d 265, 272 (3d Cir. 2001). In determining whether an environment is hostile and abusive, the United States Supreme Court has directed the lower courts to: ""look[ ] at all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993). "A recurring point in these opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998) (internal citation omitted).

Here, Mr. Mariotti has failed to allege pervasive and regular discrimination. While the comments directed at him by MBP officers and others were insensitive and perhaps offensive, they were not frequent or sever. A handful of teasing and crude remarks over more than ten years does not establish an abusive work environment. Even if some comments were allegedly made with more frequency, e.g. referring to Mr. Mariotti as "Reverend Bob," the United States Supreme Court has clearly held that teasing and offhand comments are insufficient to make out a hostile work environment claim.

**III. Mr. Mariotti's State Law Claims**

Having determined it will dismiss Mr. Mariotti's federal claims, the Court will not exercise supplemental jurisdiction over his remaining state law claims. 28 U.S.C. §

1367(c)(3).

**CONCLUSION**

The Court will grant MBP's motion to dismiss (Doc. 22) because Mr. Mariotti was not an employee under Title VII; has not stated a claim for hostile work environment; and the Court will not exercise supplemental jurisdiction over his state law claims. An appropriate order follows.

7/8/11
Date

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ROBERT A. MARIOTTI, SR.,

Plaintiff,

MARIOTTI BUILDING PRODUCTS, INC.,

Defendant.

CIVIL ACTION NO. 3:11-CV-737

(JUDGE CAPUTO)

**ORDER**

**NOW**, this 8th day of July, 2011, **IT IS HEREBY ORDERED** that MBP's motion to dismiss Mr. Mariotti's amended complaint is **GRANTED**.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge